### DENTON v. BENNETT et al.

(Supreme Court, Appellate Division, Second Department.    March 3, 1905.)

1. OYSTER BEDS—REGULATION OF RIGHTS AND PRIVILEGES.

Laws 1868, p. 1652, c. 734, regulating the right of the inhabitants of certain towns to plant oysters under the public waters within the towns, and prohibiting the exercise of the privilege without the written permit of the justice of the peace and supervisor, was not a legislative disaffirmance of the claim of the towns to the ownership and control of the waters under colonial patents, but, on the contrary, distinctly recognized the right of the town authorities to grant or withhold the privilege of planting oysters.

2. SAME — LEASE — POWERS OF FISH COMMISSIONERS — LANDS CLAIMED BY TOWNS.

Evidence consisting of town records, minutes of town meetings, town laws, etc., *held* to show assertions by the town of a claim under colonial patents to lands under public waters within the town, under section 198

of the fisheries, game, and forest law (added to Laws 1892, p. 983. c. 488, by Laws 1895, p. 924, c. 974, and amended by Laws 1898, p. 1160, c. 453), which limits the powers conferred upon the commissioners by section 197 of the law (Laws 1895, p. 924, c. 974), to lease lands under water for the purposes of shellfish cultivation, by providing that it shall not apply to lands under water claimed under colonial patents or legislative grants by any town or person in certain counties.

3. APPEAL—DISPOSITION OF CAUSE—REVERSAL—DISMISSAL.
    Where there is a fatal objection to plaintiff's right to maintain the action which cannot be obviated on a new trial, the order of reversal on appeal should direct a dismissal of the complaint.

Appeal from Special Term, Kings County.

Action by Charles E. Denton against Edward Bennett and others. From a judgment granting an injunction, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Robert Stewart, for appellants.
Thomas Kelby, for respondent.

WILLARD BARTLETT, J.   The right of the plaintiff to maintain this action depends upon the validity of the lease of lot No. 341 in Jamaica Bay, Kings county, made to Frank E. Dickens on May 10, 1898, by the commissioners of fisheries, game, and forests; the plaintiff having acquired the original lessee's interest therein by virtue of mesne assignments.

In executing the lease, the commissioners assumed to act under the provisions of section 197 of the fisheries, game, and forest law. Laws 1892, p. 983, c. 488, as amended by Laws 1895, p. 237, c. 395, as amended by Laws 1895, p. 924, c. 974.   Section 198 of the same general statute, however, as in force at the time of the execution of this lease, limited the powers conferred upon the commissioners by the preceding section by providing that it should not "apply to or affect lands under water owned, controlled or claimed under colonial patents or legislative grants by any town or person in the counties of Suffolk, Queens, Kings or Richmond."   See section as amended by Laws 1898, p. 1160, c. 453, taking effect on April 22, 1898.   The leased lot in question consisted of land under water on Canarsie Pol, in the body of water formerly know as "Flatlands Bay," and now better known as "Jamaica Bay." The learned trial judge held that there was no evidence in the case that the town of Flatlands (which was annexed to the city of Brooklyn by chapter 450, p. 918, of the Laws of 1894) at any time claimed said lands under water either under colonial patent or by legislative grant.

I am unable to concur in this view.   I think the proof shows repeated assertions of a claim under the colonial patents relating to the town, beginning in the eighteenth century, and never disputed until a very recent date.   The extracts in the record from the official minutes of the town meetings of Flatlands contain abundant evidence of this claim. On April 15, 1790, the freeholders and inhabitants met "in order to make prudential rules, orders and regulations concerning fishing, fowling, oystering, clamming and other benefits arising out of the bay laying within the patents of said town," and resolved that every person,

not being an inhabitant, "going in the said bay" with a batteau or other small craft for fishing, should pay threepence a day to the trustees. On April 17, 1808, a town law was passed, the preamble of which recites that "the practice of catching clams with rakes in the bays and deep waters within the patents of the town of Flatlands is found to be very destructive to the growth and increase of clams," and this recital is followed by a prohibition against taking clams with rakes "in the bays and deep waters within the patent aforesaid." On the first Tuesday of April, 1810, the town meeting chose Gerret Wyckoff and Johannes Lott to be trustees of the Bay of Flatlands. Other "Trustees of the Bay of the Town of Flatlands" were elected at the town meeting held on the first Tuesday of April, 1814, and it was ordained "that no person or persons shall be allowed to catch crabs with rakes or tongs in the bays within the patent of the town of Flatlands." On August 24, 1816, a town law was enacted forbidding those not inhabitants from cutting or carrying away sedge "on any marsh or meadow in the bay belonging to the town of Flatlands"; and on September 3, 1816, at a special town meeting, it was resolved that it should not thereafter be lawful "to catch or take clams, oysters or crabs with rakes or tongs in the waters of the patent of said town." The record contains further evidence to the same effect.

In 1868 the Legislature passed an "Act for the protection of oysters in the towns of Gravesend and Flatlands, Kings county," which declared that the inhabitants, upon compliance with the terms of the statute, might plant oysters under the public waters within their respective towns, but limited the extent of land under water so to be used by any one person to three acres, and provided that the privilege should not be exercised without the written permit of the justice of the peace and the supervisor, who, before granting such permit, were required to exact satisfactory evidence that the premises were not a natural bed of oysters, and were not already occupied or used. Laws 1868, p. 1652, c. 734. I do not construe this statute as a legislative disaffirmance of the claim of the town of Flatlands to the ownership and control of the Bay of Flatlands under its colonial patents. On the contrary, it distinctly recognized the right of the town authorities to grant or withhold the privilege of planting oysters there, and this power they exercised until the annexation of the town to Brooklyn under the act of 1894. It is true that Mr. Justice Pratt, writing for the General Term of this department in the case of The People v. Thompson, 30 Hun, 457, which was a criminal prosecution under the act of 1868, did say:

"It is not pretended that the town of Flatlands ever obtained any exclusive right to the fisheries within the waters which lie within its territories. There was no evidence of any grant to the town, and no presumptive right is claimed in its behalf."

But this language has no application to the case at bar, where the contentions and claims of the parties, as well as the proofs, are radically different; nor does it support the assertion of the respondent that at that time the town made no pretension of ownership to these lands under water, for the town was not in any sense a party to the proceeding, and was not and could not have been heard therein.

The evidence having demonstrated the existence of a claim at least :a hundred years old in behalf of the town, based upon its colonial pat- ·ents and practically undisputed, I think there should have been judg- ·ment for the defendants, upon the ground of want of statutory power in the commissioners of fisheries, game, and forests to grant the lease ·upon which the plaintiff's title rests.

The appellants ask us to go further and determine that, upon the ·evidence in the record before us, not only the town's claim, but the town's actual ownership of these lands under water, was established ·by the colonial patents and the proof of possession and user thereunder. In the view which has been taken, it is not necessary to decide that ·question upon this appeal.  In the very careful consideration which I have been obliged to give to the case in all its aspects, I have found indications of the existence of evidence, not contained in this record ·(such as old maps and the like), bearing upon this question of owner- ship, and, should the issue arise again in any other litigation, it is probable that fuller and more satisfactory proofs may be presented, ·rendering its solution less difficult.

In the present case, as there is a fatal objection to the plaintiff's right to maintain the action, which cannot be obviated upon a new trial, the order of reversal should direct that the complaint be dismissed.  All ·concur; HOOKER, J., not voting.